UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MYKEL ISBELL, DEBORAH PICKETT, and
CATHLEEN NORMAN-DELGADO,

        Plaintiffs,

  -against-

THE CITY OF NEW YORK and PATRICIA
LE GOFF, in her official and individual
capacities,

        Defendants.

Case No.: 15-cv-8314(VSB)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs MYKEL ISBELL ("Isbell"), DEBORAH PICKETT ("Pickett"), and CATHLEEN NORMAN-DELGADO ("Norman-Delgado") by and through their attorneys, SERRINS FISHER LLP, alleges against Defendants THE CITY OF NEW YORK ("NYC") and PATRICIA LE GOFF ("Le Goff") in her official and individual capacities as follows:

**JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 201 *et seq.* (Fair Labor Standards Act), 42 U.S.C. § 1981(a)(Section 1981), 42 U.S.C. § 1983)(Section 1983), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.    Venue is proper in this District because Defendants conduct business in this district, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## PROCEDURAL REQUIREMENTS

3. Pursuant to §8-502(c) of the City Law, Plaintiffs served a copy of the original Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York within ten (10) days of filing the original Complaint.

## THE PARTIES

4. That at all times relevant hereto, Defendant NYC is a municipal corporation organized and existing as such under and by the virtue of the laws of the State of New York.

5. That at all times relevant hereto, New York City Department of Corrections ("DOC") is a department subdivision of Defendant NYC and is a municipal entity duly organized and existing under and by the virtue of the laws of the State of New York.

6. That at all times relevant hereto, Defendant NYC operated, maintained, controlled and supervised DOC.

7. That at all times relevant hereto, Plaintiffs were employees of Defendant NYC and DOC.

8. At all relevant times herein, Defendant NYC was an employer under the Fair Labor Standards Act.

9. Defendant Le Goff is a Caucasian woman who is an employee of Defendant NYC and DOC, holding the position of Assistant Commissioner for Equal Employment Opportunity.

10. Since 2010, Defendant Le Goff was Plaintiffs' supervisor and had supervisory authority over Plaintiffs, including setting their schedules, taking disciplinary action against them and proposing salary increases for them.

11. Plaintiffs are adult individuals residing in the State of New York, who had been employed by Defendants within the last six (6) years to work as Investigators and Associate Investigators in DOC's Equal Employment Opportunity Department ("EEO Department").

## NATURE OF THE ACTION

12. Plaintiffs bring this action to recover damages pursuant to (a) Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 206(d) ("Equal Pay Act"); (b) New York Labor Law § 194 ("NY Equal Pay Act"); (c) New York State Human Rights Law, Executive Law § 290 *et seq.* ("Human Rights Law"); and (d) the Administrative Code of the City of New York § 8-101 *et seq.* ("City Law") for differential pay on the basis of their sex and gender.

13. Plaintiffs also bring claims to recover damages pursuant to 42 U.S.C. § 1981(a)("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), Human Rights Law and City Law for disparate treatment in pay and a hostile work environment on the basis of their race.

14. At all relevant times hereto, Defendants have continuously been doing business in the State of New York and City of New York, and have continuously employed four (4) or more employees, and accordingly are "employers" within the definition of the Human Rights Law and City Law.

15. Upon information and belief, at all relevant times hereto, Defendants have been and continue to be "employers" within the meaning of the FLSA, 29 U.S.C. § 203.

## FACT ALLEGATIONS

*Defendants' Equal Pay Violations Based on Plaintiffs' Sex, Gender, and Race*

16. At all times relevant hereto, Defendants have committed the following acts and/or omissions intentionally and willfully, with knowledge that they have been violating federal, state, and city laws and that Plaintiffs have been and continue to be economically injured.

17. Plaintiffs are African-American women.

18. Plaintiff Isbell began working for DOC on August 30, 2004 and was transferred to DOC's EEO Department in 2010 where she worked until on and about June 1, 2015.

19. Plaintiff Pickett began working for DOC in the EEO Department in March 2007.

20. Plaintiff Norman-Delgado began working for DOC in the EEO Department in February 2007.

21. For most of the relevant period, all Plaintiffs worked as Associate Investigators in DOC's EEO Department.

22. For majority of the relevant period of this Complaint, Plaintiffs and Dennis Wall ("Wall"), who is a White Caucasian, were the only Associate Investigators in DOC's EEO Department and had the same job title and job duties.

23. Mr. Wall became an Associate Investigator in DOC's EEO Department in 2012, a position in which he remained until July 2015, when he was transferred out of the EEO Department.

24. Plaintiffs and Mr. Wall performed work of equal skill, effort, and responsibility and virtually identical duties, which primarily included the following:

> i. investigating sensitive charges of discriminatory employment practices;
>
> ii. performing site visits to interview knowledgeable parties;
>
> iii. interviewing charging parties, witnesses and respondents in response to a charge of discrimination; and
>
> iv. preparing, reviewing, summarizing and evaluating relevant information in investigation reports.

4

Case 1:15-cv-08314-VSB   Document 21   Filed 03/10/16   Page 5 of 17

25. Plaintiffs and Mr. Wall worked under similar working conditions. They each were supervised by Defendant Le Goff and worked in the same office.

26. Defendants discriminated against Plaintiffs on the basis of their sex, gender, and race in paying them less than Mr. Wall.

27. From September 2012 through August 2014, Plaintiffs each earned an annual salary of $49,528.

28. Since September 2014 through the present, Plaintiffs have earned an annual salary of approximately $51,000.00.

29. By contrast, in 2011, Mr. Wall earned an annual salary of $71,340 even though he performed identical work as Plaintiffs.

30. Mr. Wall also received raises in the years subsequent to 2011 and therefore earns substantially more annually than Plaintiffs.

31. During each of the years Mr. Wall worked in the EEO Department until his transfer in July 2015, he earned an annual salary far in excess of Plaintiffs' annual salary.

32. Defendants unlawfully paid Mr. Wall more than Plaintiffs because of their gender, sex, and race.

*Defendants' Hostile Work Environment, Disparate Treatment of Plaintiffs Because of Their Sex, Gender, and Race and Retaliation Against Them for Opposing Unlawful Practices*

33. Throughout Plaintiffs' employment with Defendants, Plaintiffs were subjected to a severe and pervasive hostile work environment and treated less well than Mr. Wall because of their race, gender and sex.

34. Defendants engaged in this conduct purposely and with intent to harm Plaintiffs.

35. Throughout Plaintiffs' employment with Defendants, Defendant Le Goff routinely subjected Plaintiffs to discriminatory harassment.

5

36. Instances of discriminatory harassment include but are not limited to:

    i. Heavily scrutinizing and criticizing Plaintiffs' work and baselessly disciplining them based on allegedly inadequate work product;

    ii. Refusing to authorize overtime work and then criticizing Plaintiffs if they were unable to meet Defendant Le Goff's deadlines to complete assignments;

    iii. Replacing African-American employees in the EEO Department with employees of other races;

    iv. Refraining from communicating with African-American employees and delegating to her assistant the responsibility of communicating with those employees;

    v. Frequently denying Plaintiffs' requests to use DOC vehicles to perform site visits, thereby delaying their investigations;

    vi. Attempting to transfer Plaintiff Pickett to a different DOC department without Plaintiff Pickett's knowledge;

    vii. Communicating with Plaintiffs using a harsh and sarcastic tone; and

    viii. Heavily criticizing Plaintiffs when they made work-related suggestions.

37. Mr. Wall was not subject to similar harassment.

38. Defendant Le Goff expressed racial animus toward the African American employees, especially the female employees, working in the EEO Department.

6

39. Specifically, Defendant Le Goff confided to Special Hagan in 2011, who was employed as EEO Counsel, that she wished to replace her predominately African American staff.

40. Defendant Le Goff ultimately made good on that prediction and replaced all the African American employees in the EEO Department, largely with non-African American employees.

41. Defendants transferred Plaintiff Isbell to a different unit in June 2015.

42. Defendants transferred Plaintiffs Norman-Delgado and Pickett to other units in February 2016.

43. Defendants transferred Plaintiffs from the EEO Department without their consent or request.

44. Plaintiffs did not receive a raise when they were transferred.

45. Conversely, Mr. Wall requested a transfer, which was granted, and he received a raise after being transferred.

46. Aside from replacing the investigators, Defendant Le Goff in late 2014 also replaced Patricia Gordon, an African American woman, who was the Deputy Director of the Department and had many years of experience working as an EEO investigator.

47. Defendant Le Goff replaced Ms. Gordon with Kammae Owens in 2015, who is not African-American and had significantly less EEO experience.

48. In 2014, Defendant Le Goff also attempted to transfer Plaintiff Pickett from the EEO Department without a request from Plaintiff Pickett.

49. Defendant Le Goff also overtly expressed hostility toward her African-American employees by generally refusing to communicate with them and instead delegating that duty to Ms. Gordon and after her replacement Ms. Owens.

50. After replacing Ms. Gordon with Ms. Owens in 2015, Defendant Le Goff generally only interacted with Ms. Owens, Mr. Wall and Ms. Le Goff's secretary, a Latina women.

51. Moreover, when she did communicate with her African-American employees, Defendant Le Goff regularly used harsh and sarcastic language, which she did not do when communicating with Mr. Wall, Ms. Owens, or the non-African American members of her staff.

52. Defendant Le Goff also regularly "wrote up" Plaintiffs for imagined or exaggerated infractions, which she did not do to Mr. Wall.

53. For example, Defendant Le Goff criticized Plaintiff Isbell for taking a day off for medical reasons, even though Plaintiff Isbell had complied with the DOC's notice requirements for taking medical leave.

54. In addition, even though Plaintiffs' work performance was satisfactory, Defendant Le Goff unjustifiably criticized their performance and required them to attend corrective interviews with her assistant.

55. In addition to the hostility she expressed toward her African-American employees, Defendant Le Goff treated Mr. Wall more favorably than Plaintiffs and other African-American employees.

56. For example, in 2014 and 2015, Mr. Wall was freely permitted to use a DOC vehicle to perform investigations at New York City jails, while Plaintiffs were regularly denied permission to do so.

57. In addition, throughout the time Defendant Le Goff was in charge of the EEO Department, even when Defendant Le Goff reluctantly permitted Plaintiffs to use the vehicle, she required them to fill up the car with gasoline at the Riker's Island facility.

58.     This task was not part of Plaintiffs' job duties, and Defendant Le Goff did not require Mr. Wall to perform it.

59.     Additionally, on one occasion in 2014 when Plaintiff Norman-Delgado requested permission to use the vehicle, Defendant Le Goff delayed the use while allegedly confirming that Plaintiff Norman-Delgado was approved to use the vehicle, even though Plaintiff Norman-Delgado had been approved to use the vehicle since 2007.

60.     Because Defendant Le Goff denied Plaintiffs use of a DOC vehicle, their investigations sometimes took longer to complete, for which Defendant Le Goff criticized them.

61.     In addition, Defendant Le Goff permitted Mr. Wall to work overtime if he needed in order to complete investigations while denying Plaintiffs the same privilege.

62.     Defendant Le Goff was also significantly more responsive to Mr. Wall's suggestions and even denied Plaintiffs permission to attend a training program because Mr. Wall had previously advised her that the training was not useful.

63.     Defendant Le Goff's hostile tone and actions towards Plaintiffs and her other African-American subordinates evidenced racial animus towards them.

64.     These comments created a hostile work environment and constituted disparate treatment and caused Plaintiffs emotional harm that continues until present.

65.     In addition to the hostile work environment and disparate treatment, Defendants also retaliated against Plaintiffs because they opposed her comments and because Plaintiffs reported the unlawful conduct to other departments of the DOC and filed a complaint with government agencies.

66.     On a number of occasions, Plaintiffs complained to Defendant Le Goff about the disparate treatment to which they were subjected.

9

67. Plaintiff Isbell also complained in December 2014 to R. Fenimore Fisher, the Deputy Commissioner, Citywide Chief Diversity & EEO Officer at Department of Citywide Administrative Services ("DCAS"), about Defendant Le Goff's unlawful behavior.

68. In addition, around the same time, Plaintiffs reported Defendant Le Goff's unlawful conduct to District Council 37 Union, of which they were members, and the union initiated a grievance.

69. Separately, Plaintiffs each filed complaints with the New York State Division on Human Rights ("State Division") alleging unlawful pay disparities, as well as a hostile work environment, and disparate treatment based on their race.

70. Specifically, Plaintiff Isbell filed complaints with the State Division on and about November 14, 2014, February 26, 2015 and March 18, 2015.

71. Plaintiffs Norman-Delgado and Pickett also filed complaints with the State Division on and about March 18, 2015.

72. As a result of these and other complaints, Defendant Le Goff began to treat Plaintiffs even worse.

73. Also as a result of these complaints, in June 2015, Defendants, upon information and belief at the behest of Defendant Le Goff, transferred Plaintiff Isbell to a different and less prestigious unit.

74. Similarly, Plaintiffs Norman-Delgado and Pickett advised Defendants on July 5, 2015 that they had retained an attorney to bring a lawsuit for discrimination and retaliation.

75. Subsequently, Defendant Le Goff through Ms. Owens began to harshly criticize Plaintiffs Norman-Delgado and Pickett's work.

76. Both Plaintiffs Norman-Delgado and Pickett received "corrective interviews" in and about August 2015 regarding their alleged poor work performance.

77. Subsequently, on December 30, 2015, Plaintiff Pickett complained to Mr. Fisher about Defendant Le Goff's discriminatory and retaliatory treatment.

78. Subsequently, the DCAS investigated Plaintiff Pickett's complaint.

79. DCAS interviewed Plaintiff Norman-Delgado as part of the investigation, and Plaintiff Norman-Delgado advised the DCAS investigator of Defendant Le Goff's discriminatory and retaliatory conduct.

80. In response to these complaints, on February 5, 2016, Defendants, upon information and belief at Defendant Le Goff's behest, transferred Plaintiffs Norman-Delgado and Pickett out of the EEO Department to a less prestigious unit.

## **FIRST CLAIM FOR RELIEF**
**(Equal Pay Act Violations Against All Defendants)**

81. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

82. At all relevant times hereto, Defendants have been Plaintiffs' employers within the meaning of the FLSA, 29 U.S.C. § 203.

83. By the acts and practices described above, in violation of the Equal Pay Act, Defendants discriminated against Plaintiffs by paying a similarly situated male employees higher wages than Plaintiffs were paid in a job that required equal skill, effort, and responsibility, and which was performed under similar working conditions.

84. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiffs' statutorily protected rights.

85. Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(NY Equal Pay Act Violations Against All Defendants)**

86. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

87. By the acts and practices described above, in violation of the New York Equal Pay Act, Defendants discriminated against Plaintiffs by paying a similarly situated male employee higher wages than Plaintiffs were paid in a job that required equal skill, effort, and responsibility, and which was performed under similar working conditions.

88. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiffs' statutorily protected rights.

89. Plaintiffs seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the NYLL, attorneys' fees and costs, and such other relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**(Disparate Treatment of Plaintiffs**
**On the Basis of Sex and Race**
**In Violation of Human Rights Law Against All Defendants)**

90. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

91. By the acts and practices described above, Defendants discriminated against Plaintiffs in violation of Human Rights Law by compensating them at a lower rate of pay and subjecting them to a hostile work environment on the basis of their sex and race.

92. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiffs' statutorily protected rights.

93. Plaintiffs have suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to their reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

**FOURTH CLAIM FOR RELIEF**
**(Disparate Treatment of Plaintiffs**
**On the Basis of Gender and Race**
**In Violation of City Law Against All Defendants)**

94. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

95. Defendants discriminated against Plaintiffs in violation of City Law by compensating them at a lower rate of pay and subjecting them to a hostile work environment on the basis of their gender and race.

96. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiffs' statutorily protected rights.

97. Plaintiffs have suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to their reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

**FIFTH CLAIM FOR RELIEF**
**(Sec. 1981 Violations for Race Discrimination and Retaliation Against Defendant Le Goff)**

98. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

99. By the acts and practices described above, Defendant Le Goff discriminated against Plaintiffs in violation Sec. 1981(c).

100. Sec. 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

13

contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens…" 42 U.S.C. § 1981(a).

101. Section 1981(c) and the Fourteenth Amendment to the U.S. Constitution protect "all persons" against "nongovernmental discrimination."

102. Defendant Le Goff systematically, adversely, and purposefully created a discriminatorily hostile work environment against Plaintiffs based on race.

103. Defendant Le Goff knew that her actions constituted unlawful harassment and willfully disregarded Plaintiffs' statutorily protected rights.

104. Plaintiffs are now suffering mental anguish, pain, suffering, and monetary damages as a result of Defendant Le Goff 's harassing conduct.

### SIXTH CLAIM FOR RELIEF
**(Sec. 1983 Violations for Race Discrimination and Retaliation Against Defendant Le Goff)**

105. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

106. The aforementioned adverse employment actions and hostile work environment described above are a violation of Section 1983 vis-a-vis the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

107. Defendant Le Goff, while acting under color of law, subjected Plaintiffs to egregious race and sex discrimination in the form of adverse employment actions and hostile work environment, thereby treating them differently based on their age and sex as described herein.

108. As described above, Defendant Le Goff, willfully and maliciously deprived Plaintiffs of rights, privileges, and immunities under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by engaging in age discrimination in

the form of adverse employment actions and by creating a hostile work environment for Plaintiffs that was either severe or pervasive.

109. As a direct and proximate result of Defendant Le Goff's unlawful discrimination in violation of Section 1983, Plaintiffs are now suffering mental anguish, pain, suffering, and monetary damages as a result of Defendant Le Goff's harassing conduct.

## SEVENTH CLAIM FOR RELIEF
### (Human Rights Law Retaliation Against All Defendants)

110. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

111. Defendants were aware of the discrimination and harassment based on their own participation in, observation of, and employee complaints about the prohibited conduct.

112. Defendants intentionally refused to investigate and/or correct the discriminatory/harassing behavior and failed respond to respond to Plaintiffs' complaints of discrimination and harassment.

113. Defendants instead engaged in retaliatory conduct against Plaintiffs for their protected activities, which included opposition to discrimination and harassment, as well as the filing of complaints and charges of discrimination in the appropriate forums.

114. Defendants knew their actions constituted retaliation under Human Rights Law. Thus, Defendants willfully disregarded Plaintiffs' statutorily protected rights.

115. Plaintiffs are now suffering mental anguish, pain, suffering, and monetary damages as a result of Defendants' retaliatory conduct.

## EIGHTH CLAIM FOR RELIEF
### (City Law Retaliation Against All Defendants)

116. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

15

117. Defendants were aware of the discrimination and harassment based on their own participation in, observation of, and employee complaints about the prohibited conduct.

118. Defendants intentionally refused to investigate and/or correct the discriminatory/harassing behavior and failed respond to respond to Plaintiffs' complaints of discrimination and harassment.

119. Defendants instead engaged in retaliatory conduct against Plaintiffs for their protected activities, which included opposition to discrimination and harassment, as well as the filing of complaints and charges of discrimination in the appropriate forums.

120. Defendants knew their actions constituted retaliation under City Law. Thus, Defendants willfully disregarded Plaintiffs' statutorily protected rights.

121. Plaintiffs are now suffering mental anguish, pain, suffering, and monetary damages as a result of Defendants' retaliatory conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants awarding:

A. Compensatory, punitive, mental anguish, pain and suffering damages sustained as a result of Defendants' discriminatory and retaliatory conduct;

B. Liquidated Damages;

C. Prejudgment Interest;

D. Back Pay, Front Pay, and damages for all employment benefits Plaintiffs would have received but for the discriminatory acts and practices of Defendants;

E. Plaintiffs' costs and reasonable attorneys' fees; and

F. Any relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all claims for relief to which they have a right to a jury trial.

Dated: March 10, 2016
      New York, New York

                                                   Respectfully submitted,

                                                   _____/s/_____

                                                   Michael Taubenfeld (MT-4640)
                                                   SERRINS FISHER LLP
                                                   233 Broadway, Suite 2340
                                                   New York, New York 10279
                                                   Phone: (212) 571-0700
                                                   Facsimile: (212) 233-3801
                                                   *ATTORNEYS FOR PLAINTIFFS*