UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                             :

MYKEL ISBELL, DEBORAH PICKETT, and  :
CATHLEEN NORMAN-DELGADO,       :
                             :

               Plaintiffs,   :

        - against -       :

THE CITY OF NEW YORK and PATRICIA  :
LE GOFF, in her official and individual  :
capacities,                  :

              Defendants.  :

-------------------------------------------------------X

**15-CV-8314 (VSB)**

<u>**OPINION & ORDER**</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/25/2018

<u>Appearances:</u>

Michael Taubenfeld
Serrins & Associates LLC
New York, New York

Liane Fisher
Fisher Taubenfeld LLP
New York, New York
*Counsel for Plaintiffs*

Shira M. Blank
Tomasz Pacholec
New York City Law Department
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge:</u>

      Plaintiffs Mykel Isbell, Deborah Pickett, and Cathleen Norman-Delgado ("Plaintiffs")

bring this action alleging differential pay on the basis of their gender in violation of the Fair

Labor Standards Act (the "Equal Pay Act"), as amended, 29 U.S.C. § 206(d) and the New York

Labor Law, (the "New York Equal Pay Act"), N.Y. Labor Law § 194, against the City of New

York and Patricia Le Goff ("Defendants"); and discrimination on the basis of sex and race, including by creating a hostile work environment, and retaliatory conduct in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.* against all Defendants, as well as in violation of 42 U.S.C § 1981(a) and 42 U.S.C. § 1983 against Defendant Le Goff.  Before me is Defendants' motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons stated below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.   **Background**[1]

Plaintiffs are all African American women who, for nearly the entire period of time relevant to the Amended Complaint, worked as Associate Investigators in the Equal Employment Opportunity ("EEO") Department of the New York City Department of Corrections ("DOC"). (Am. Compl. ¶¶ 17–21.)[2]  Plaintiff Isbell began working for the DOC on August 30, 2004 and transferred to the EEO Department in 2010; Plaintiff Pickett began working in the EEO Department of the DOC in March 2007; and Plaintiff Norman-Delgado began working in the EEO Department of the DOC in February 2007.  (*Id.* ¶¶ 18–20.)  For most of the relevant time period, Plaintiffs worked with only one other Associate Investigator:  Dennis Wall, a white Caucasian man, who began working in the EEO Department in 2012.  (*Id.* ¶¶ 22–23.)  Plaintiffs do not allege when Wall began working for the DOC, but do state that he was an Associate Investigator in the EEO Department from 2012 until July 2015, when he was transferred to a

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint, unless otherwise indicated, which I assume to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Complaint, filed on March 10, 2016.  (Doc. 21.)

different department.  (*Id.* ¶ 23.)  "Plaintiffs and Mr. Wall performed work of equal skill, effort, and responsibility and virtually identical duties . . . ."  (*Id.* ¶ 24.)  Such work included: investigating sensitive charges of discriminatory employment practices; performing site visits to interview knowledgeable parties, including charging parties' witnesses and respondents in response to discrimination charges; and preparing, reviewing, summarizing, and evaluating relevant information in investigation reports.  (*Id.*)  Defendant Le Goff supervised Plaintiffs and Wall.  (*Id.* ¶ 25.)

From September 2012 through August 2014, Plaintiffs earned an annual salary of $49,528, which in September 2014 was increased to approximately $51,000.  (*Id.* ¶¶ 27–28.)  In 2011, Wall earned an annual salary of $71,340, and received raises in subsequent years.  (*Id.* ¶¶ 29–30.)  In addition to the salary disparity, during the relevant time period, Plaintiffs also allege various "[i]nstances of discriminatory harassment" and "racial animus" exhibited by Defendant Le Goff, most of which they allege without any specificity, including that she:

- heavily scrutinized and unjustifiably criticized Plaintiffs' work and criticized them when they made work-related suggestions, (*id.* ¶¶ 36, 38, 54);

- made Plaintiffs attend corrective interviews with her assistant, (*id.* ¶ 54);

- baselessly disciplined Plaintiffs because of supposedly inadequate work product, including by "writing up" Plaintiffs for "imagined or exaggerated infractions," (*id.* ¶¶ 36, 38, 52);

- criticized Plaintiff Isbell for taking a day off for medical reasons, even though she had complied with the DOC's notice requirements, (*id.* ¶¶ 38, 53);

- refused to authorize overtime work while simultaneously criticizing Plaintiffs' inability to meet deadlines, (*id.* ¶ 36);

- replaced African American employees with employees of other races, (*id.* ¶¶ 36, 38–43, 46–47);

- refrained from communicating with African American employees, except through her assistant or deputy director, (*id.* ¶¶ 36, 38, 49–50);

- denied Plaintiffs' requests to use DOC vehicles to perform site visits and when she granted their requests, required them to fill up the car with gasoline, (*id.* ¶¶ 36, 38, 57);

- on one occasion in 2014, delayed Plaintiff Norman-Delgado's use of a DOC vehicle while confirming that she was approved, even though she had been approved to use the vehicle since 2007, (*id.* ¶¶ 38, 59);

- criticized Plaintiffs for taking longer with their investigations when Le Goff's refusal to allow Plaintiffs to use a DOC vehicle caused the delays, (*id.* ¶ 60);

- attempted to transfer Plaintiff Pickett to a different DOC department without her knowledge, (*id.* ¶ 36); and

- used a "harsh and sarcastic tone," which she did not do when communicating with Wall, her non-African American deputy director, or other non-African American members of her staff (*id.* ¶¶ 36, 51, 63).

Generally, Plaintiffs allege that Defendant Le Goff treated Wall "more favorably." (*Id.* ¶¶ 37, 55, 61.) For example, in 2014 and 2015, Le Goff "freely" permitted Wall to use a DOC vehicle to perform his investigations. (*Id.* ¶ 56.) Additionally, Le Goff was more responsive to Wall's suggestions and, after Wall advised her that a training program was not useful, denied Plaintiffs permission to attend that training program. (*Id.* ¶ 62.)

Plaintiffs also allege that Defendant Le Goff transferred them for discriminatory reasons

and in a discriminatory fashion and that Le Goff confided to the EEO counsel in 2011 that "she wished to replace her predominantly African American staff." (*Id.* ¶ 39.) Plaintiffs allege that Le Goff replaced African American employees in the EEO Department, "largely with non-African American employees." (*Id.* ¶ 40.) Specifically, Defendants transferred Plaintiff Isbell to a different unit in June 2015 and, after previously attempting unsuccessfully to transfer Plaintiff Pickett in 2014, transferred Plaintiffs Norman-Delgado and Pickett to different units in February 2016. (*Id.* ¶¶ 41–42, 48.) In late 2014, Le Goff also replaced another African-American woman, the Deputy Director of the EEO Department, with a non-African American woman. (*Id.* ¶¶ 46–47.) Unlike with Plaintiffs, Defendant Le Goff transferred Wall only after he requested a transfer, and Wall received a raise after being transferred. (*Id.* ¶¶ 43–45.)

Additionally, Plaintiffs allege retaliatory conduct in response to Plaintiffs' reports and complaints. (*Id.* ¶ 65.) Plaintiffs' numerous complaints include that: (1) Plaintiffs complained to Defendant Le Goff "[o]n a number of occasions"; (2) Plaintiff Isbell complained in December 2014 to R. Fenimore Fisher, the Deputy Commissioner, Citywide Chief Diversity & EEO Officer at the Department of Citywide Administrative Services (the "DCAS"); (3) Plaintiffs, around December 2014, reported Defendant Le Goff's conduct to the District Council 37 Union, and the Union initiated a grievance as a result; and (4) Plaintiffs separately filed complaints with the New York State Division of Human Rights ("NYSDHR"), alleging unlawful pay disparities, hostile work environment, and disparate treatment. (*Id.* ¶¶ 66–69.) In particular, Plaintiff Isbell filed NYSDHR complaints on November 14, 2014, February 26, 2015, and March 18, 2015; and Plaintiffs Norman-Delgado and Pickett filed NYSDHR complaints on or about March 18, 2015. (*Id.* ¶¶ 70–71.) Plaintiffs further informed Defendants on July 5, 2015 that they had retained an attorney to bring a lawsuit for discrimination and retaliation. (*Id.* ¶ 74.) Plaintiffs allege that as a

result of their complaints, Defendants transferred Plaintiff Isbell to a "different and less prestigious unit" in 2015 and, after Plaintiffs notified Defendants of their intent to file a lawsuit, Defendant Le Goff, through her assistant, began to harshly criticize the work of Plaintiffs Norman-Delgado and Pickett and gave them "corrective interviews" on or about August 2015. (*Id.* ¶¶ 73, 75–76.)  Plaintiff Pickett complained to Fisher on December 30, 2015, which resulted in a DCAS investigation that included an interview of Plaintiff Norman-Delgado.  (*Id.* ¶¶ 77–79.) On February 5, 2016, "Defendants, upon information and belief at Defendant Le Goff's behest," transferred Plaintiffs Norman-Delgado and Pickett to a "less prestigious unit."  (*Id.* ¶ 80.)

## II.     Procedural History

Plaintiffs commenced this case by filing their Complaint on October 21, 2015, alleging numerous claims related to their employment at the DOC.  (Doc. 1.)  After I granted Defendants' request for an extension of time to respond to the Complaint on November 24, 2015, (Doc. 10), on January 6, 2016, Defendants filed a pre-motion letter in anticipation of filing a motion to dismiss under Rule 12(b)(6), (Doc. 11).  On January 11, 2016, Plaintiffs responded by simply noting that they intended to amend the Complaint as of right, (Doc. 12), and on January 19, 2016, I granted Defendants' request for a pre-motion conference and requested that Defendants submit a letter stating their position with respect to Plaintiffs' intended amendment, (Doc. 13). In response to my order, on January 21, 2016, Defendants submitted a letter indicating that they did not consent to the proposed amendment absent first reviewing the proposed pleading.  (Doc. 14.)  I subsequently set a pre-motion conference for February 4, 2016, (*see* Doc. 15), during which time I set a schedule for the motion to dismiss briefing and proposed amended complaint, (*see* Doc. 19).  In accordance with that schedule, on February 18, 2016, Defendants filed their initial motion to dismiss, (Docs. 16–18), and on March 10, 2016, Plaintiffs filed their amended

complaint, (Doc. 21).

On March 30, 2016, Defendants submitted another pre-motion letter requesting a conference on their proposed motion to dismiss the Amended Complaint, (Doc. 22), and on April 4, 2016, Plaintiffs filed their response, (Doc. 23). In response to these letters, on April 12, 2016, I issued an order dismissing the initial motion to dismiss as moot in light of the filing of the Amended Complaint, noting that I would not hold a second pre-motion conference, and setting a briefing schedule for the second motion to dismiss. (Doc. 24.) Pursuant to the deadlines set, Defendants filed their motion to dismiss on May 12, 2016. (Docs. 25–27.) After twice requesting extensions to file their opposition, which I granted, (Docs. 29, 31), Plaintiffs filed their opposition on June 15, 2016, (Doc. 32). Defendants similarly requested an extension of time to file their reply, which I granted, (Doc. 34), and they filed their reply on July 15, 2016, (Doc. 35).

### III. <u>Legal Standards</u>

#### A. *Rule 12(b)(1)*

Defendants assert that the election-of-remedies provisions in the NYSHRL and NYCHRL bar the claims of Plaintiffs Isbell and Norman-Delgado. (*See* Defs.' Mem. 9–11.)[3] Defendants do not identify the Federal Rule of Civil Procedure pursuant to which they seek dismissal on election-of-remedies grounds, (*see id.*), but it is well-established that election-of-remedies challenges raise an issue of subject matter jurisdiction. *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995). Therefore, I construe Defendants' motion as one brought under Rule 12(b)(1) to the extent it seeks dismissal on election-of-remedies grounds. *See Grays*

---

[3] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, filed on May 12, 2017. (Doc. 27.)

*v. SDH Educ. W., LCC*, No. 16 Civ. 666 (DAB), 2017 WL 2240227, at *3 (S.D.N.Y. Mar. 23, 2017) (construing motion to dismiss, in part, under Rule 12(b)(1) where it sought dismissal on election-of-remedies grounds).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (citation omitted). "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (internal quotation marks omitted).

### B.    *Rule 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7*

*Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Furthermore, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). Even if a document is not incorporated in a complaint by reference, "the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). In addition, a court may consider matters of which judicial notice may be taken on a Rule 12(b)(6) motion to dismiss. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## IV. __Discussion__

Defendants move to dismiss the entirety of Plaintiffs' Amended Complaint, and raise six grounds they assert warrant dismissal of some or all of the claims for relief. First, Defendants argue that any claims arising before October 21, 2012 are time-barred. (Defs.' Mem. 8–9.) Second, Defendants assert that Plaintiffs' NYSHRL and NYCHRL claims are barred by the election-of-remedies provisions of the NYSHRL and NYCHRL, given Plaintiffs' decision to

pursue relief through the NYSDHR.  (*Id.* at 9–11.)  Third, Defendants assert that Plaintiffs'

§ 1981 and § 1983 claims are barred by collateral estoppel in light of the NYSDHR's findings.

(*Id.* at 11–12.)  Fourth, Defendants assert that Plaintiffs' § 1981 claims must be dismissed

because § 1983 provides the exclusive remedy for violations of the rights asserted by Plaintiffs.

(*Id.* at 12.)  Fifth, Defendants argue that Plaintiffs' allegations fail to plausibly state any claims

for relief.  (*Id.* at 13–24.)  Sixth, Defendants contend that Plaintiffs have failed to state § 1981

and § 1983 claims against the City of New York.  (*Id.* at 24–25.)  I first address the issue of

election of remedies, as it implicates my ability to preside over this case since it relates to

whether or not there is subject matter jurisdiction.  I then address Defendants' remaining

arguments in turn.

## A.    *Election of Remedies Under the NYSHRL and NYCHRL*

Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful

discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for

damages . . . and such other remedies as may be appropriate . . . unless such person had filed a

complaint hereunder or with any local commission on human rights."  N.Y. Exec. Law § 297(9).

"At any time prior to a hearing before a hearing examiner, a person who has a complaint pending

at the division may request that the division dismiss the complaint and annul his or her election

of remedies so that the human rights law claim may be pursued in court."  *Id.*  The election

provision contained in the NYCHRL includes virtually the same language, and provides for

virtually the same exception.  *See* N.Y.C. Admin. Code § 8-502(a)–(b); *see also York v. Ass'n of

Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002) ("[T]he language of the CHRL is nearly

identical to that of § 297(9), and discussion of the latter applies equally to the former." (internal

quotation marks omitted)).

Applying these provisions, once NYSHRL and NYCHRL claims are "brought before the NYSDHR, [they] may not be brought again as a plenary action in another court." *York*, 286 F.3d at 127 (citing *Moodie*, 58 F.3d at 882).  However, "[a] statutory exception to the election of remedies doctrine provides that where the complaint filed with a local human rights commission is dismissed for administrative convenience, a person is not barred from filing a plenary lawsuit." *York v. Ass'n of the Bar of City of N.Y.*, No. 00 CIV. 5961(DC), 2001 WL 776944, at *5 (S.D.N.Y. July 11, 2001), *aff'd*, 286 F.3d 122 (2d Cir. 2002); N.Y. Exec. Law § 297(9) ("[W]here the division has dismissed [an unlawful discriminatory practice] complaint on the grounds of administrative convenience . . . [the complainant] shall maintain all rights to bring suit as if no complaint had been filed with the division.").

Defendants filed a number of documents in support of their argument that the election-of-remedy clauses bar Plaintiffs' claims for relief.  Defendants submit two determinations issued by the NYSDHR:  one addressing Plaintiff Isbell's December 30, 2014 charge, and one addressing Plaintiff Norman-Delgado's May 29, 2013 charge.  (*See* Blank Decl. ¶¶ 6, 9, Exs. E, H.)[4] Defendants also submit copies of Plaintiff Isbell's NYSDHR charges filed on December 30, 2014, February 26, 2015, and March 18, 2015, (*id.* ¶¶ 3–5, Exs. B–D); Defendants' position statement in response to Plaintiff Isbell's March 18, 2015 charge, (*id.* ¶ 7, Ex. F); Plaintiff Norman-Delgado's May 29, 2013 charge, (*id.* ¶ 8, Ex. G); Plaintiffs' respective wage disparity charges, (*id.* ¶ 10, Ex. I); and the NYSDHR's letters noting its intention to dismiss certain charges for administrative convenience based on related claims being filed in court, (*id.* ¶ 11, Ex. J.)  Because these documents are relevant to the existence of subject matter jurisdiction, I

---

[4] "Blank Decl." refers to the Declaration of Shira M. Blank, submitted in support of Defendants' motion to dismiss, filed on May 12, 2016.  (Doc. 26.)  Because several exhibits attached to the Blank Declaration are not consecutively paginated, I refer to the pagination assigned to the exhibits by the SDNY Electronic Case Filing system.

consider them in deciding Defendants' Rule 12(b)(1) motion to dismiss based upon election of remedies.[5]  *Grays*, 2017 WL 2240227, at *4.

As an initial matter, Plaintiffs have represented that on July 21, 2015, the NYSDHR dismissed their undecided charges for administrative convenience.  (*See* Pls.' Opp. 6.)[6]  In support of this statement, Plaintiffs rely on the NYSDHR's notices of intent to dismiss, which state only that the NYSDHR is considering dismissal.  (*See* Blank Decl. Ex. J.)  Defendants have not offered evidence that contradicts these notices; therefore, I assume for purposes of deciding the election-of-remedies issue that the charges were dismissed for administrative convenience. As a result, Plaintiffs are not barred from filing suit for claims related to these charges unless they are otherwise barred by the charges separately filed by Plaintiffs Isbell and Norman-Delgado, and decided by the NYSDHR.  (*See id.*, Exs. B, E, G, H.)

In light of the presumed NYSDHR dismissals for administrative convenience and considering only those charges that were not dismissed, I find that only the hostile work environment claims of Plaintiffs Isbell and Norman-Delgado brought under the NYSHRL and NYCHRL—but not their retaliation or discrimination claims or any of Plaintiff Picketts' claims—are barred by the election-of-remedies provisions.  With respect to the hostile work environment claim, it is clear that Plaintiffs Isbell and Norman-Delgado's claims for relief here assert the same cause of action and are based on the same incidents as those alleged before the NYSDHR.  *See Williams v. Skyline Auto. Inc.*, No. 11 Civ. 8318(KBF), 2012 WL 1965334, at *3 (S.D.N.Y. May 24, 2012) ("If substantially the same facts are involved, then the doctrine of

---

[5] Plaintiffs Isbell and Norman-Delgado also appear to have submitted exhibits to the NYSDHR, although these documents were not submitted in connection with the motion to dismiss.  (*See, e.g.*, Blank Decl. Ex. B, at 24; *id.*, Ex. G, at 9–10.)

[6] "Pls.' Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed on June 15, 2016.  (Doc. 32.)

election of remedies will bar any subsequent court proceedings.  The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine.") (quoting *Benjamin v. N.Y.C. Dep't of Health,* 2007 WL 3226958, at *5 (N.Y. Sup. Ct. Oct. 23, 2007)).  Indeed, Plaintiff Isbell's December 2014 NYSDHR charge specifically alleged discrimination and harassment in violation of the NYSHRL, including by intimidation, denial of training, denial of leave time and other benefits, criticism of the manner in which work was performed, and other disciplinary actions taken by Defendant Le Goff.  (*See* Blank Decl. Ex. B.)  Similarly, Plaintiff Norman-Delgado's May 2013 NYSDHR charge claimed unlawful discrimination because of race and color in violation of the NYSHRL, and included allegations that Defendant Le Goff created a hostile work environment "for the majority of African American staff assigned to the unit," engaged in unfair disciplinary actions, scolded Plaintiff Norman-Delgado for speaking loudly while not doing to the same to others, refused to move Norman-Delgado to a different desk while granting similar requests made by others, and effectively denied her overtime while granting the overtime request made by at least one other individual.  (*See id.* Ex. G, at 1, 5, 9–10.)  Although the Amended Complaint contains additional allegations not included in the NYSDHR charges, the facts are "substantially similar" such that barring the hostile work environment claims of Plaintiffs Isbell and Norman-Delgado is warranted.  *See Williams*, 2012 WL 1965334, at *3.

In contrast, the discrimination and retaliation claims of Plaintiffs Isbell and Norman-Delgado were not fully before the NYSDHR, most notably because a necessary element of those claims, the adverse employment action ultimately alleged in the Amended Complaint—transfers to different departments—had not yet occurred when Plaintiffs filed their NYSDHR charges.  *Cf. id.* (noting that the NYSDHR complaints identified the plaintiff's termination as an adverse

employment action). (*Compare* Blank Decl. Exs. E & H, *with* Am. Compl. ¶¶ 41–42, 48.)

Although Plaintiff Isbell did complain of general retaliatory conduct in response to her requests

for more training, (*see, e.g.*, Blank Decl. Ex. B, at 14), the absence of a key allegedly adverse

event in the NYSDHR charge distinguishes the claims brought from the present action. *See*

*Stanley v. Guardian Sec. Servs., Inc.*, 800 F. Supp. 2d 550, 556 (S.D.N.Y. 2011) (denying motion

to dismiss discrimination and retaliation claims on election-of-remedies grounds where

termination occurred after Plaintiff initiated complaint with NYSDHR); *Alston v. N.Y.C. Transit*

*Auth.*, No. 02 CIV.2400 JGK, 2003 WL 22871917, at *9 n.7 (S.D.N.Y. Dec. 3, 2003) ("Because

the plaintiff's claim of retaliation arose after his complaint was dismissed by the NYSDHR and

he plainly did not raise it before the NYSDHR, he is not barred by the election of remedies from

raising a claim of retaliation under the NY[S]HRL or the [NY]CHRL.").

    As a result of the foregoing, I deny entirely Defendants' request to dismiss the NYSHRL

and NYCHRL claims brought by Plaintiff Pickett, deny Defendants' request to dismiss the

discrimination and retaliation claims brought by Plaintiffs Isbell and Norman-Delgado under the

NYSHRL and NYCHRL, and grant Defendants' request to dismiss the hostile work environment

claims brought by Plaintiffs Isbell and Norman-Delgado under the NYSHRL and NYCHRL.

Accordingly, the hostile work environment claims of Plaintiffs Isbell and Norman-Delgado

brought under the NYSHRL and NYCHRL are dismissed for lack of subject matter jurisdiction.

### B. *Statute of Limitations*

    Defendants contend that because Plaintiffs filed this action on October 21, 2015, any

claims brought under § 1981, § 1983, the NYSHRL, and the NYCHRL that accrued prior to

October 21, 2012 are barred by the relevant statutes of limitations. (Defs.' Mem. 9; Defs.' Reply

2–3.)[7]  Claims brought under § 1983, the NYSHRL, and the NYCHRL are subject to a three-year statute of limitations.  *See Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011).  Claims brought under § 1981 are subject to a four-year statute of limitations.  *Id.* at 574.  As a result, Plaintiffs' § 1983, NYSHRL, and NYCHRL claims premised on conduct occurring before October 21, 2012 are time-barred, as are Plaintiffs' § 1981 claims based on conduct occurring before October 21, 2011, unless an exception to the limitations period can be applied.  *See id.*

Plaintiffs invoke the continuing violation doctrine, (*see* Pls.' Opp. 8), which holds that "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it," *Bermudez*, 783 F. Supp. 2d at 574 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).  To qualify for this exception when bringing discrimination claims, Plaintiffs must allege that at least one of the discriminatory acts furthering the alleged policy of discrimination occurred within the limitations period.  *Id.* (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)).  However, "a series of discrete but related acts of discrimination [] do not warrant application of the continuing violations doctrine."  *Milani v. Int'l Bus. Machs. Corp., Inc.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002); *see also Bartman v. Shenker*, 786 N.Y.S.2d 696, 702 (N.Y. Sup. Ct. 2004) (applying *Morgan* to determine the

---

[7] "Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, filed on July 15, 2016.  (Doc. 35.)

application of the continuing violation doctrine to claims brought under the NYSHRL and

NYCHRL).[8]

    With respect to Plaintiffs' discrimination and retaliation claims, Plaintiffs, for the most

part, do not provide precise dates for the alleged mistreatment, and instead attempt to establish a

pattern of ongoing conduct by referring to Defendant Le Goff's practices and consistent

behavior.  (*See generally* Am. Compl.)  The only precise dates given that are arguably outside of

either limitations period are the claims of disparate pay for certain paycheck periods, (*see id.* ¶¶

27–30), and Defendant Le Goff's alleged confiding in 2011 to EEO counsel that she wished to

replace her African American staff, (*see id.* ¶ 39).  In any event, Plaintiffs rely on events that

occurred within the limitations period and that were allegedly connected to the earlier actions—

such as the transfers of Plaintiffs to different departments and the replacement of another African

American woman with a non-African American person, (*id.* ¶¶ 41–42, 46, 48, 73, 80); the giving

of corrective interviews in August 2015, (*id.* ¶ 76); and Defendant Le Goff's reluctance to allow

Plaintiffs to use the company vehicle in 2014 and 2015, (*id.* ¶¶ 56, 59).  Viewed in a light most

favorable to Plaintiffs and to the extent these allegations state a claim, the allegations plausibly

present a continuous policy or practice of discriminatory treatment and retaliatory conduct.

    Plaintiffs' claims premised on a hostile work environment are also not time-barred.

Because such claims generally allege repeated conduct and not, as with acts of discrimination,

"conduct that is a discrete unlawful act," "a hostile work environment claim . . . will not be time

barred so long as all acts which constitute the claim are part of the same unlawful employment

---

[8] *Morgan*'s application to NYCHRL claims, which are generally treated more permissively, is subject to some dispute.  *See Mohamed v. N.Y. Univ.*, No. 14cv8373 (GBD)(MHD), 2015 WL 3387218, at *18 (S.D.N.Y. May 21, 2015), *report and recommendation adopted,* 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015), *reconsideration denied*, 2015 WL 7076124 (S.D.N.Y. Nov. 12, 2015).  Because I find that the continuing violation rule applies regardless of whether it is construed under *Morgan* or the amended NYCHRL, I do not need to distinguish Plaintiffs' NYCHRL claims from their other claims.

practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 115, 117.

Plaintiffs allege numerous actions that are part of the alleged unlawful employment practice that

occurred within the limitations period. (*See generally* Am. Compl.) As a result, Plaintiffs'

hostile work environment claims, whether brought under § 1983, § 1981, the NYSHRL, or the

NYCHRL are timely. *See Bermudez*, 783 F. Supp. 2d at 582 (noting that "the continuing-

violation exception is applied in the same way whether the claim is under federal, state, or city

law"). Defendants' motion to dismiss the claims predicated on any conduct occurring prior to

October 2012 or, in the context of Plaintiffs' § 1981 claims, prior to October 2011, based on the

statutes of limitations is denied.

**C.**     ***Preclusion of Plaintiffs Isbell and Norman-Delgado's § 1981 and § 1983 Claims[9]***

Defendants further allege that the § 1981 and § 1983 claims of Plaintiffs Isbell and

Norman-Delgado are collaterally estopped by the NYSDHR decisions. (*See* Defs.' Mem.

11–12.) Specifically, Defendants contend that the NYSDHR decided two issues essential to the

survival of Plaintiffs Isbell and Norman-Delgado's claims of discrimination under § 1981 and

§ 1983: whether they suffered an adverse employment action, and whether the adverse

employment action occurred under circumstances giving rise to discriminatory animus. (*See id.*

at 11.)

For a state agency determination to be given preclusive effect where that determination

was not subsequently affirmed by a state court, it must be such that the finding would be

preclusive in state court. *See Basak v. N.Y. State Dep't of Health*, 9 F. Supp. 3d 383, 394

(S.D.N.Y. 2014). Under New York law, which must be applied in this proceeding, "collateral

---

[9] Defendants do not move against Plaintiff Pickett on this ground. (*See* Defs.' Mem. 11–12 (specifying that "Plaintiffs Isbell and Norman Delgado" cannot meet the elements of their discrimination claims and that "plaintiffs Isbell and Norman-Delgado's §§ 1981 and 1983 claims should be dismissed")).)

estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party whether or not the tribunals or causes of action are the same." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (internal quotation marks omitted). Ultimately, a New York court must find that "the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action," and that the issue that was raised previously is "decisive of the present action." *Id.* (internal quotation marks omitted). "The party seeking to assert preclusion bears the burden of proving identity of issue, while the adverse party bears the burden of proving the absence of a full and fair opportunity to litigate the issue." *Skates v. Inc. Vill. of Freeport*, No. CV 15-1136, 2016 WL 1459659, at *12 (E.D.N.Y. Jan. 28, 2016) (citing *Basak*, 9 F. Supp. 3d at 394).

As stated previously, in connection with their motion, Defendants submit certain documents, including two NYSDHR determinations related to charges brought separately by Plaintiffs Isbell and Norman-Delgado. (*See* Blank Decl., Exs. E, H.) To the extent that a particular filing with the NYSDHR is not referenced or otherwise incorporated into the Amended Complaint, I may take judicial notice of it for purposes of deciding Defendants' motion. *See Rasmy v. Marriott Int'l, Inc.*, 16-cv-04865 (AJN), 2017 WL 773604, at *5 n.4 (S.D.N.Y. Feb. 24, 2017); *Macer v. Bertucci's Corp.*, No. 13-CV-2994 (JFB)(ARL), 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013) (holding that "courts regularly take [judicial] notice of NY[S]DHR filings and determinations relating to a plaintiff's claims").

Defendants have not shown that there is an identity of issues with respect to either of the two issues purportedly decided. First, with respect to whether Plaintiffs suffered an adverse employment action, the eventual transfer of Plaintiffs to another department was not before the

NYSDHR determinations.  Second, with respect to whether the alleged adverse employment action occurred under circumstances giving rise to discriminatory animus, various allegations—including that Defendant Le Goff replaced African American employees with employees of other races, refrained from communicating with African American employees, and stated that she wanted to replace her largely African American staff, (*see* Am. Compl. ¶¶ 36, 38–43, 46–47, 49–50)—were also after the NYSDHR determinations.  In fact, with respect to Plaintiff Norman-Delgado's charge, the NYSDHR specifically noted in issuing its decision that Norman-Delgado had not indicated that any employee of a different race received overtime, (*see* Blank Decl. Ex. H, at 3), while this is expressly alleged in the Amended Complaint, (Am. Compl. ¶ 61).  As a result, I find that the NYSDHR's findings are not entitled to preclusive effect.

### D.  *Plaintiffs' § 1981 Claim*

Defendants further claim that Plaintiffs' § 1981 claim should be dismissed because, when a defendant is a state actor, § 1983 is the exclusive remedy for violations of rights guaranteed under § 1981.  (Defs.' Mem. 12.)  Defendants are generally correct and, to the extent that Plaintiffs' § 1981 claim is made against Defendant Le Goff in her official capacity, Plaintiffs' claim must be brought under § 1983.  *See Bermudez*, 783 F. Supp. 2d at 576.  However, to the extent that Plaintiffs allege a claim under § 1981 against Defendant Le Goff in her individual capacity, they may bring such a claim.

### E.  *Equal Pay Act Violations*[10]

Defendants submit that Plaintiffs fail to state a claim for unequal pay under both the

---

[10] "An equal pay claim under New York Labor Law § 194 is analyzed under the same standards applicable to the federal Equal Pay Act." *Chiaramonte v. Animal Med. Ctr.*, No. 16-0478-cv, 2017 WL 390894, at *1 n.1 (2d Cir. Jan. 26, 2017) (summary order) (quoting *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 29 n.2 (2d Cir. 2015) (summary order)).  As such, my findings with respect to the Federal Equal Pay Act apply with equal force to Plaintiffs' state Equal Pay Act claim.

federal and state Equal Pay Acts. (*See* Defs.' Mem. 13–15.) I disagree. Under the federal Equal Pay Act:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). "Thus, to prove a violation of the EPA, a plaintiff must demonstrate that '(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.'" *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254–55 (2d Cir. 2014) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)). The standard is "demanding," and requires that a plaintiff "establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Id.* at 255. At the pleading stage, "a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job *content* was substantially equal." *Id.* at 256 (internal quotation marks omitted). Broad generalizations drawn from job titles, and conclusory assertions of sex discrimination, do not suffice. *Id.*

Plaintiffs' Amended Complaint pleads specific facts demonstrating that they were paid less than Associate Investigator Dennis Wall—their male comparator. (Am. Compl. ¶¶ 27–29.) *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (identifying a single male comparator whose salary was known, and otherwise allowing a statistical composite of male faculty members to support the plaintiff's prima facie case). As stated *supra*, Plaintiffs'

Amended Complaint also compares their precise job duties with those of Wall.  (Am. Compl. ¶ 24.)  Although Defendants may later succeed in proving the affirmative defense of seniority or a decision based on any factor other than sex, particularly given Defendants' claim that Plaintiffs' salaries are subject to a collective bargaining agreement under which Wall is paid more by reason of his seniority, (*see* Defs.' Mem. 14–15), it is not appropriate to consider this argument at this time.[11]  Accordingly, I find that Plaintiffs have satisfied the standard for pleading an Equal Pay Act violation and deny Defendants' motion to dismiss this claim.

### F.  *Plaintiffs' Discrimination, Hostile Work Environment, and Retaliation Claims*

Plaintiffs also allege that they were subjected to discrimination, a hostile work environment, and retaliation in violation of § 1981, § 1983, the NYSHRL, and the NYCHRL.[12] The Second Circuit has instructed that NYCHRL claims must be analyzed "separately and independently from any federal and state law claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  As explained in greater detail below, I find that Plaintiffs (1) state a claim for discrimination on the basis of race under § 1981, § 1983, the NYSHRL, and the NYCHRL; (2) fail to state a claim for a hostile work environment under § 1981, § 1983, and the NYSHRL; (3) state a claim for a hostile work environment under the NYCHRL; and (4) state a claim for retaliation under all of the relevant statutes.[13]

---

[11] Defendants submitted Wall's service record at the DOC in conjunction with their motion.  (*See* Blank Decl. Ex. A.)  However, this document was not attached as an exhibit to, incorporated by reference into, or relied upon heavily by the Amended Complaint, nor does it contain matters of which I may take judicial notice.  Therefore, I decline to consider it in resolving Defendants' Rule 12(b)(6) motion to dismiss.  *See DiFolco*, 622 F.3d at 111; *Chambers*, 282 F.3d at 152; *Kramer*, 937 F.2d at 773.

[12] Although I have dismissed Plaintiffs Isbell and Norman-Delgado's hostile work environment claims brought under the NYSHRL and NYCHRL for lack of subject matter jurisdiction, I have not dismissed Plaintiff Pickett's hostile work environment claims, so I evaluate her hostile work environment claim under those two statutes.

[13] Although Plaintiffs dispute Defendants' argument that they waived their gender discrimination claims by failing to plead them in the NYSDHR complaints, (*see* Pls.' Opp. 10 n.2), they do not argue in any way that their gender

### 1. Plaintiffs' Federal and State Law Claims

In order to state a claim under § 1983, "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted). A state employee who is acting in his or her official capacity—as Plaintiffs allege is the case with Defendant Le Goff—is acting "under color of state law." *See id.* at 88. Once a plaintiff satisfies the color of state law requirement, "a plaintiff's equal protection claim [under § 1983] parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (internal quotation marks omitted). Claims of employment discrimination brought under § 1981 and the NYSHRL are analyzed under a similar framework, as are retaliation claims. *Bermudez*, 783 F. Supp. 2d at 576–77.

### a. Discrimination

With this in mind, to establish their discrimination claim under § 1981, § 1983, or the NYSHRL, Plaintiffs must allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 85. An employer discriminates against an employee by taking an adverse employment action, such as termination of employment. *Id.* An employer discriminates against an employee "because of" his race, color, religion, sex, or national origin "where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Id.* Given the rarity of direct and overt evidence of intentional discrimination, a plaintiff must typically "rely on 'bits and pieces'

---

discrimination claims should survive a Rule 12(b)(6) motion, (*see generally* Pls.' Opp.). As such, I conclude that they abandoned this claim. *See Martinez v. Sanders*, No. 02 Civ.5624(RCC), 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) (citing case law).

of information to support an inference of discrimination, *i.e.*, a 'mosaic' of intentional discrimination." *Id.* at 86. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Plaintiffs' Amended Complaint satisfies this test with respect to Plaintiffs' claims of race discrimination. Although Plaintiffs' allegations are bare bones and may not be substantiated through discovery, Plaintiffs still assert that they were transferred without their consent or request, that they did not receive a raise when they were transferred, and that the transfers were to "less prestigious unit[s]." (Am. Compl. ¶¶ 43–44, 73, 80.) These allegations are sufficient, at this early stage, to find that Plaintiffs have adequately pled that they suffered from an adverse employment action. *See Dillon v. Morano*, 497 F.3d 247, 254–55 (2d Cir. 2007) ("[W]e have found that the transfer from an 'elite' unit to a 'less prestigious' unit could constitute adverse employment action . . . ."); *Williams v. All. Nat'l Inc.*, 24 F. App'x 50, 53 (2d Cir. 2001) (summary order) ("A plaintiff can show an adverse employment action where, even though she was transferred to a job with the same rank and pay, the new position was arguably less prestigious *or* entailed diminished responsibilities.") (emphasis added) (citing *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 21 (2d Cir. 1996)). Moreover, although it is unclear based upon the allegations in the Amended Complaint whether or not Plaintiffs were replaced entirely by non-African American employees, the Amended Complaint alleges that Plaintiffs were "largely" replaced by non-African American individuals. (Am.

Compl. ¶ 40.)  This sufficiently alleges an inference of discrimination under Rule 12(b)(6).  *See*

*Littlejohn*, 795 F.3d at 313 ("The fact that a plaintiff was replaced by someone outside the

protected class will ordinarily suffice for the required inference of discrimination at the initial

prima facie stage of the . . . analysis, including at the pleading stage."); *Williams*, 24 F. App'x at

53.  Accordingly, I deny Defendants' motion to dismiss Plaintiffs' race discrimination claims

brought under § 1983, § 1981, and the NYSHRL.

### b.  Hostile Work Environment

To adequately plead a claim for a hostile work environment under § 1983, § 1981, or the

NYSHRL, a plaintiff must include facts plausibly demonstrating that "the workplace is

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of [her] employment and create an abusive working

environment."  *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted); *see also*

*Bermudez*, 783 F. Supp. 2d at 578.  In the first part of this inquiry, to plead an abusive working

environment, a plaintiff must satisfy "both objective and subjective components: the conduct

complained of must be severe or pervasive enough that a reasonable person would find it hostile

or abusive, and the victim must subjectively perceive the work environment to be abusive."

*Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted).  This requires that the incidents be

"more than episodic."  *Id.*  A court "must consider the totality of the circumstances, including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance."  *Id.* (internal quotation marks omitted).  "Hostile work

environment claims are meant to protect individuals from abuse and trauma that is severe.  They

are not intended to promote or enforce civility, gentility or even decency."  *Bermudez*, 783 F.

Supp. 2d at 579 (citation omitted).

With regard to the second part of the inquiry, a plaintiff must plausibly allege "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." *Id.* at 578 (citation omitted). "It is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Rogers v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *8 (S.D.N.Y. Feb. 26, 2016) ("Plaintiff must plausibly allege a basis to infer that Defendants took these unfavorable actions against him because of his race.").

None of the Plaintiffs sufficiently allege claims of an abusive working environment, and I therefore dismiss their claims brought under § 1981, § 1983, and the NYSHRL. Specifically, with regard to each Plaintiff, the Amended Complaint asserts that Defendant Le Goff criticized Plaintiff Isbell for taking the day off, (Am. Compl. ¶ 53), delayed Plaintiff Norman-Delgado's use of a DOC vehicle, "harshly" criticized Norman-Delgado's work, and gave her a corrective interview, (*id.* ¶¶ 59, 75–76), and "harshly" criticized Plaintiff Pickett's work and gave her a corrective interview as well, (*id.* ¶¶ 75–76). Plaintiffs allege other facts as related to all Plaintiffs—mostly lacking specific examples—which complain of heavy scrutiny and criticism, discipline for inadequate work product, refusal to authorize overtime, use of a "harsh and sarcastic tone," refraining from communicating with Plaintiffs, denying Plaintiffs use of the DOC vehicle, and denying Plaintiffs training opportunities. (*See generally id.*) These allegations do not state a claim for a hostile work environment. *See, e.g.*, *Littlejohn*, 795 F.3d at

321 (allegations that the employer made negative statements about the plaintiff, was impatient and used harsh tones with the plaintiff, distanced herself and declined to meet with the plaintiff, required the plaintiff to recreate work, wrongfully reprimanded the plaintiff, increased the plaintiff's schedule, and was sarcastic to the plaintiff, could not support a finding of a severe or pervasive hostile work environment). Therefore, Defendants' motion to dismiss the hostile work environment claims brought under § 1981, § 1983, and the NYSHRL is granted.

### c. Retaliation

In order to survive a motion to dismiss retaliation claims brought under § 1981, § 1983, or the NYSHRL, a plaintiff must plausibly allege that "(1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d at 91; *see also Bermudez*, 783 F. Supp. 2d at 575. "A plaintiff engages in a protected activity when she opposes any practice made an unlawful employment practice . . . or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Bermudez*, 783 F. Supp. 2d. at 575 (internal quotation marks omitted). An adverse employment action is a "materially adverse change" in the terms and conditions of employment, which is "a change in working conditions that is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* at 576 (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of a materially adverse change include the termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal quotation marks omitted).

Here, Plaintiffs allege that, after Plaintiff Isbell filed a NYSDHR complaint on March 18,

2015, she was transferred to a different and less prestigious unit in June 2015. (Am. Compl. ¶¶ 70, 73.) Similarly, after Plaintiffs Norman-Delgado and Pickett filed NYSDHR complaints on March 18, 2015, and thereafter informed Defendants on July 5, 2015 that they intended to bring a lawsuit, Defendant Le Goff began to harshly criticize their work, gave them "corrective interviews," and, after they filed this lawsuit in October 2015, transferred them to a less prestigious unit in February 2016. (*Id.* ¶¶ 71, 74–80.) Although courts in this Circuit have found that the passing of even two or three months is insufficient to allow an inference that the protected activity caused the adverse employment action, the Second Circuit has noted that in making this determination, courts also consider whether other supporting allegations are absent. *See Brown v. City of N.Y.*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (citing case law); *see also Hagan v. City of N.Y.*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014) ("[W]here protected activity is followed by minor adverse adjustments in the terms of employment, it becomes more plausible that an ensuing adverse employment action was caused by the protected activity."). Since Plaintiffs rely on allegations in addition to the temporal proximity of the protected activity to the adverse employment actions, Plaintiffs' allegations plausibly state a claim for retaliation. *See Vega*, 801 F.3d at 91 (actions after filing of EEOC discrimination charge in August 2011, including being assigned more students who were excessively absent in the 2011-2012 school year, a salary reduction in March 2012, and a negative performance review in February 2013, each plausibly stated a claim of retaliation).

### 2. Plaintiffs' NYCHRL Claim

The Second Circuit has instructed that NYCHRL claims must be analyzed "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109. In addition, NYCHRL claims should be "construed liberally for the accomplishment of the

uniquely broad and remedial purposes thereof." *Id.* Indeed, "while courts may still dismiss truly insubstantial cases, even a single comment may be actionable in the proper context." *Id.* at 113 (internal quotation marks omitted). With respect to discrimination claims, NYCHRL's more permissive standard allows for liability to be "determined simply by the existence of differential treatment. To establish a gender [or race] discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender [or race]." *Id.* at 110 (internal quotation marks omitted). It is of no matter that the challenged conduct is intangible. *See id.* Notably, this standard also renders claims brought under the NYCHRL incongruent with a typical hostile work environment analysis, leading some courts to address the analysis by explaining that to plead a hostile work environment claim under the NYCHRL, a plaintiff need only allege "the existence of unwanted gender-based [or race-based] conduct." *See, e.g.*, *Bermudez*, 783 F. Supp. 2d at 579 (internal quotation marks omitted). However, "district courts must be mindful that the NYCHRL is not a general civility code . . . plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110 (internal quotation marks omitted). Based on this permissive standard, Plaintiffs have alleged discrimination and hostile work environment claims under the NYCHRL, and I therefore deny Defendants' motion to dismiss these claims.

Retaliation claims brought under the NYCHRL are similarly subject to a lower standard. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* at 112; *see also Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015). Given that I have

already found that Plaintiffs satisfy the more stringent standard applied to retaliation claims brought under § 1983, § 1981, and the NYSHRL, I find that Plaintiffs have adequately stated a claim for retaliation under the NYCHRL.

### G. Monell *Liability*

Defendants argue that Plaintiffs' claims against the City brought under § 1981 and § 1983 should be dismissed because Plaintiffs have failed to satisfy the standard for asserting a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See* Defs.' Mem. 24–25.) Plaintiffs, however, only bring their § 1981 or § 1983 claims against Defendant Le Goff. (*See* Am. Compl. ¶¶ 98–109.) Since Plaintiffs have not asserted claims against the City, I need not address Defendants' *Monell* argument.

### V. <u>Conclusion</u>

For the reasons stated herein, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' motion to dismiss is GRANTED with respect to (1) Plaintiffs' hostile work environment claims brought under § 1981, § 1983, and the NYSHRL; (2) Plaintiffs Isbell and Norman-Delgado's hostile work environment claims brought under the NYCHRL; (3) Plaintiffs' § 1981 claims against Defendant Le Goff in her official capacity; and (4) Plaintiffs' gender discrimination claims. Defendants' motion to dismiss is DENIED with respect to (1) Plaintiffs' differential pay claims under the Equal Pay Act and New York Equal Pay Act; (2) Plaintiff Pickett's hostile work environment claim brought under the NYCHRL; (3) Plaintiffs' discrimination claims brought under the NYSHRL, NYCHRL, and § 1983 against all Defendants and under § 1981 against Defendant Le Goff in her individual capacity; and (4) Plaintiffs' retaliation claims brought under the NYSHRL, NYCHRL, and § 1983 against all Defendants and under § 1981 against Defendant Le Goff in her individual capacity.

Defendants shall file an Answer to the Amended Complaint within twenty-one (21) days of this Opinion and Order. The Clerk of Court is respectfully directed to terminate the open motion at Document 25.

SO ORDERED.

Dated: May 25, 2018
       New York, New York

Vernon S. Broderick
United States District Judge